IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROSEMARY FALLON, | : |
| Plaintiff, | : |
| v. | : CIVIL ACTION |
| QUALITY ASSET RECOVERY, LLC et al, | : NO. 11-51 |
| Defendants. | : |

## MEMORANDUM OPINION

Tucker, C. J.　　　　　　　　　　　　　　　　　　　　　　　　　　July 16, 2013

Presently before the Court is Defendant's Motion for Summary Judgment (Doc. 22), Plaintiff's Response in Opposition (Docs. 23 & 24), and Defendant's Reply (Doc. 25). Upon consideration of the parties' motions with briefs and exhibits, and for the reasons set forth below, Defendant's motion will be granted in part and denied in part.

### I.　　FACTUAL BACKGROUND

Plaintiff Rosemary Fallon ("Fallon") brings this suit against Defendant Quality Asset Recovery, LLC ("QAR" or "Defendant") for alleged violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.* and the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* The parties have conducted little, if no, discovery in this matter. As such, many facts remain in dispute.

The basic facts are that Fallon disputes an alleged consumer debt that was placed on her credit report. The debt in question is from Main Line Diagnostic in Downington, PA for an allegedly unpaid medical bill. QAR asserts the debt totaled $300.89. Fallon denies this was the

1

amount of the allegedly unpaid balance. The parties agree that the alleged debt was placed in collection with QAR on May 1, 2006. QAR states that Larry Stellar ("Stellar") was the QAR employee responsible for managing Fallon's account.

On August 31, 2010, Stellar received a letter from Fallon disputing the $300.89 account balance. On December 5, 2010, Stellar received a follow-up letter from Fallon again disputing the account balance. Finally, on December 30, 2010, Stellar received another letter from Fallon disputing the account balance. QAR argues that, as a result of Fallon's inquiries, Stellar confirmed directly with Main Line Diagnostic that the $300.89 was for the insurance copayment remaining for the account. QAR further argues that, even though it determined the collection amount to be valid, on October 13, 2010 it nonetheless marked the account as disputed in its internal recordkeeping system. Stellar further avers that, also in October 2010, he notified TransUnion that the account was disputed.

During the pendency of its collection activities, QAR received phone calls from Fallon. Specifically, Stellar had conversations with Fallon on December 29, 2010 and January 3, 2011. The parties agree that Stellar informed Fallon during their discussions that Stellar had investigated the account and confirmed directly with the underlying creditor that the remaining balance was for an insurance copayment. Fallon alleges that QAR never provided her with any documentation justifying the alleged balanced. Fallon further alleges that QAR never explained to her how the healthcare provider calculated the allegedly owed balance.

QAR contends that, on January 5, 2011, it learned that Fallon had filed bankruptcy. As result, QAR claims that it closed Fallon's account. Nevertheless, the instant lawsuit was filed on January 24, 2011.

2

## II. STANDARD OF REVIEW

Summary judgment is appropriate where the moving party establishes that "there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law." Fed R. Civ P. 56(a); see also Levy v. Sterling Holding Co., LLC, 544 F.3d 493, 501 (3d Cir. 2008). A factual dispute between the parties will not defeat a motion for summary judgment unless it is both genuine and material. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); Dee v. Borough of Dunmore, 549 F.3d 225, 229 (3d Cir. 2008). A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit. See Anderson, 477 U.S. at 248; Fakete v. Aetna, Inc., 308 F.3d 335, 337 (3d Cir. 2002).

The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the non-moving party to carry its burden of proof. See Celotex v. Catrett, 477 U.S. 317, 327 (1986). Once the moving party has carried its burden under Rule 56, "its' opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Scott v. Harris, 550 U.S. 372, 380 (2007). Under Fed. R. Civ. P. 56(e), the opposing party must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations or denials of its pleadings. See Marten v. Godwin, 499 F.3d 290, 295 (3d Cir. 2007).

At the summary judgment stage the court's function is not to weigh the evidence and determine the truth of the matter, but rather to determine whether there is a genuine issue for trial. See Anderson, 477 U.S. at 249; Jiminez v. All American Rathskeller, Inc., 503 F.3d 247, 253 (3d Cir. 2007). In doing so, the court must construe the facts and inferences in the light most favorable to the non-moving party. See Horsehead Indus., Inc. v. Paramount Communications,

Inc., 258 F.3d 132 (3d Cir. 2001). The court must award summary judgment on all claims unless the non-moving party shows through affidavits or admissible evidence that an issue of material fact remains. See, e.g., Love v. Rancocas Hosp., 270 F.Supp.2d 576, 579 (D.N.J. 2003); Koch Materials Co. v. Shore Slurry Seal, Inc., 205 F.Supp.2d 324, 330 (D.N.J. 2002).

### III. DISCUSSION

#### A. FCRA Claim (Count I)

Generally speaking, the FCRA "protect[s] consumers from the transmission of inaccurate information about them, and ... establish[es] credit reporting practices that utilize accurate, relevant, and current information in a confidential and responsible manner." Cortez v. Trans Union, L.L.C., 617 F.3d 688, 706 (3d Cir.2010) (internal quotation marks omitted). The FCRA imposes duties not only on credit reporting agencies, but also on those who, like QAR, furnish information to such agencies. Shap v. Capital One Fin. Corp., CIV.A. 11-4461, 2012 WL 1080127 (E.D. Pa. Mar. 30, 2012) (citing SimmsParris v. Countrywide Fin. Corp., 652 F.3d 355, 357 (3d Cir.2011)). Fallon's Complaint does not specify which section of the FCRA she is alleging QAR violated. However, there is no private cause of action under 15 U.S.C. § 1681s-2. The Court therefore assumes that Fallon intended to claim that QAR violated § 1681s–2(b). Section 1681s–2(b), in certain circumstances, requires that furnishers of information to consumer reporting agencies investigate the completeness and accuracy of information furnished. 15 U.S.C. § 1681s–2(b) (2006); see also SimmsParris, 652 F.3d at 358 ("This leaves 15 U.S.C. § 1681s–2(b) as the only section that can be enforced by a private citizen seeking to recover damages caused by a furnisher of information.").

Here, Fallon states that she "concede[s] that there may be not be a private right of action under the FCRA for damages." (Pl.'s Resp. Opp'n. Mot. Summ. J 6.) Nonetheless, Fallon avers:

4

> Plaintiff still wishes to demonstrate that a FCRA violation may have occurred for the purpose of establishing that a violation of section 1692f of the FDCPA also occurred. It is a violation of section 1692f of the FDCPA to violate any other statute while attempting to collect on a consumer debt. So if Defendant violated FCRA while attempting to collect a consumer debt from Plaintiff, then Defendant also violated 1692f of the FDCPA for which there is a private right of action.

(Id.) However, Fallon has provided no information to the Court which in any way suggests that QAR failed to investigate the completeness and accuracy of information furnished to TransUnion, or any other credit reporting agency. All Fallon offers to the Court is her own unsupported, conclusory assertion that the FCRA was violated. As such, Plaintiff has presented nothing which refutes QAR's claims that (1) Stellar investigated the completeness and accuracy of the debt by contacting Main Line Diagnostic; (2) QAR marked the account as disputed in its internal recordkeeping system despite the fact that Stellar had determined the collection amount to be valid (See Def.'s Mot. Summ. J., Ex. D); and (3) Stellar notified TransUnion that that the account was being disputed by Fallon. Indeed, as Fallon herself concedes, the disputed debt no longer appears on her TransUnion credit report, even though she never made any payment on the account to Main Line Diagnostic, QAR, or any other third party debt collector. (See Aff. Rosemary Fallon.)

Fallon has neglected to conduct discovery in this matter. It is impermissible for Fallon to fail to conduct any discovery into her factual allegations, and then attempt to oppose summary judgment on the grounds that factual issues are still in dispute. The Court finds that Fallon has failed to meet her burden of demonstrating that there are genuine issues of material fact as to whether the FCRA was violated. Summary judgment is therefore granted in favor of QAR on Fallon's FCRA claim.

**B. FDCPA Claim (Count II)**

The FDCPA was enacted to eliminate "the use of abusive, deceptive, and unfair debt collection practices by many debt collectors." 15 U.S.C. § 1692(a). To that end, the FDCPA prohibits debt collectors from, *inter alia*, falsely representing the "character, amount or legal status of any debt," 15 U.S.C. § 1692e(2)(A), and from "threat[ening] to take any action that cannot legally be taken or that is not intended to be taken." 15 U.S.C. § 1692e(5).

Fallon alleges that QAR violated § 1692(e) because, during Stellar's December 29, 2010 and January 3, 2011 conversations with Fallon, Stellar threatened to take legal action against Fallon. QAR does not deny that Stellar threatened to take legal action against Fallon; rather, QAR asserts that "Mr. Stellar had full authority to authorize counsel to take legal action against the [P]laintiff for the debt should QAR choose to take legal action." (Def.'s Mot. Summ. J. 10.) Fallon counters by arguing that, in Pennsylvania, the statute of limitations for bringing a civil action based on a contract is four years. See 42 Pa. Cons. Stat. § 5525. Fallon contends that when the alleged threats of legal action were made by Stellar, the statute of limitations had already passed on the allegedly unpaid debt.

The Court agrees with Fallon. QAR does not deny that Fallon was threatened with legal action during the December 29, 2010 and January 3, 2011 telephone conversations.[1] QAR also does not refute that a four year statute of limitations applies to the collection of a debt for medical services. It is unclear from the briefs and documents provided when the alleged debt

---

[1] QAR filed a letter reply to Fallon's response in opposition to summary judgment. (See Doc 25.) In its reply, Defendant attempts to argue that the threatened legal action referenced in the December 29, 2010 and January 3, 2011 telephone conversations concerned Fallon's husband, John Johnson, who at that time had filed his own complaint against QAR. QAR claims that Stellar indicated to Fallon that QAR was contemplating filing a counterclaim against Johnson. In support, QAR has filed a second affidavit from Stellar.

Stellar's first affidavit did not specify whether he was referring to Johnson or Fallon when he threatened legal action. Rather, it generically states that Stellar "always had authority to institute suit against debtors for unpaid." (Aff. Larry Stellar ¶ 12.) However, QAR's brief does not claim the threatened legal action was directed toward Johnson and not Fallon. On the contrary, QAR's brief clearly states: "Mr. Stellar had full authority to authorize counsel to take legal action against the [P]laintiff for the debt should QAR choose to take legal action." (Def.'s Mot. Summ. J. 10). It is only in its reply letter that QAR now argues that those conversations referenced Johnson, perhaps in a futile attempt to overcome Fallon's statute of limitations defense.

was incurred by Fallon (*i.e.*, when the services were provided). However, by QAR's own admission, Fallon's "account was placed with QAR for collections on May 1, 2006" (Def.'s Mot. Summ. J., "Statement of Undisputed Material Facts" at 2.) The Court will therefore assume, but not decide, that the statute of limitations began running on May 1, 2006, and would have lapsed by May 1, 2010. The December 29, 2010 and January 3, 2011 telephone conversations, where the alleged threats were made, took place outside of this time period. Thus, Stellar's threats to take legal action were improper under 15 U.S.C. § 1692e(5) because action could not legally be taken against Fallon because the statute of limitations had lapsed.

QAR's motion for summary judgment is therefore denied as to Fallon's FDCPA claim.

## IV. <u>CONCLUSION</u>

For the reasons set forth above, Defendant's Motion for Summary Judgment is granted as to Count I of the Complaint and denied with as to Count II. An appropriate order follows.

7